James P. Grimley, Esquire
**MILLER AND GALLAGHER**
26 S. Pennsylvania Avenue
Suite 201
Atlantic City, New Jersey 08401
Tel: (609)345-4441
Fax: (609)344-0008
jpgrimley@comcast.net
Attorneys for Defendant Ocean Cable, Inc, and Robert Mills

| MICHAEL RUBBA | : | UNITED STATES DISTRICT COURT |
| --- | --- | --- |
| Plaintiff | : | FOR THE DISTRICT COURT OF |
|  | : | NEW JERSEY |
|  | : | CAMDEN VICINAGE |
| v. | : | CIVIL ACTION NO. 1:08cv990 |
|  | : |  |
| OCEAN CABLE, INC. | : |  |
| ROBERT MILLS, XYZ | : | DISCOVERY PLAN |
| CORPORATIONS 1-10 | : |  |
| AND JOHN DOES 1-10 | : |  |
| Defendants | : |  |

## BRIEF FACTUAL SUMMARY

According to the plaintiff's complaint, he alleges that as an employee of the defendant, he was not paid overtime compensation. Plaintiff was employed as a technician with Ocean Cable Group for approximately 2 years between March of 2005 through June of 2007. There is also an allegation that he was retaliated against when he complained of his entitlement to overtime compensation. As to damages, he alleges that he cannot provide an estimate as to his alleged damages because he does not have the records.

Ocean Cable Group, Inc. is a New Jersey business which, for the most part, installs and repairs digital cable for, among other things, television reception, phone, and internet. Robert Mills is the President of Ocean Cable.

Ocean Cable has a contractual agreement with Comcast to install their receivers and handle their customers' service calls.  Ocean Cable employs approximately 250-300 individuals, and a vast majority are technicians.  Technicians are paid by the tasks completed as outlined in their work-orders.   Each day, technicians would be provided a list of service calls.  The work orders would outline the time parameters when the jobs should be attended to.  In other words, the jobs would correspond to ranges of time throughout the day, i.e, 9am to 11 am, 12 pm to 2 pm, 2 pm to 4 pm, etc.  When a technician would arrive at job, they would note on their work orders the *actual time* spent at the address.   The technician would perform whatever task needed to be done, and each task would have a corresponding code in a technician handbook.  That code would be used for billing purposes.  Each task code would have a corresponding time allotment that a technician should be able to complete a task, and also a monetary value attached to the task code that the technician would be paid, regardless of how long it took the technician to actually complete the task.

By way example, after arriving for a specific job, the technician may need to do several tasks to complete the job.  On the technicians work order, they will note the time that they were physically at the job.  They will also note the codes for the tasks they completed.  One typical job could require a technician to install Cable Digital Service, which would also include installing software, maybe the installation of an outlet, additional cable, and possibly reconfiguring phone jacks.  The technician's codebook has a pre-designated allotment of time for each task. In the above example, the codebook provides:

| | |
|---|---|
| Install CDS | 2 hours |
| Install Software | 40 minutes |
| Outlet | 50 minutes |
| Cable | 45 minutes |
| Phone jacks | 20 minutes |

For this one job, the technician is allotted 4 hours 35 minutes to do it, but could physically be on the job for only 1 hour and 30 minutes.

As to compensation, each task has a designated fee assigned it. In the above example, the technician is paid as follows:

| | |
|---|---|
| Install CDS | $38.00 |
| Install Software | $9.00 |
| Outlet | $12.00 |
| Cable | $8.75 |
| Phone jacks | $6.50 |

At the present time, the defendants are still accumulating records to ascertain what, if anything, the plaintiff may be entitled to as overtime. Furthermore, it is unknown if the plaintiff is claiming he is entitled to overtime compensation for "actual" time performing a task or "allotted" time to perform it.

## **DISCOVERY PLAN**

Prior to the conference, the defendants will have provided its R. 26 disclosures, but still need to provide the plaintiff's billing records from 2005 and 2006. 2007 has been provided. Additionally, the defendants are still attempting to get a copy of a policy of insurance.

The defendants will have also provided interrogatories and a request for documents to be responded to by the defendants.

As of the date of this submission, the defendants have yet to receive the plaintiff's R. 26 disclosures or discovery requests.

The parties have conferred and present the following dates for discovery for the Court's consideration:

> Interrogatory/Document responses by September 1, 2008;
>
> Depositions completed by January 1, 2009;

The parties do not believe that experts will be required.

As to digital information, most, if not all, of the records relevant to this litigation are not in digital form.

## INSURANCE

The undersigned has yet to receive a copy of any insurance policy to review; however, it is unlikely that a general policy of insurance will cover this matter.

## SETTLEMENT DISCUSSIONS

Based upon initial investigation, the defense does not feel it has violated any overtime laws. Until all records are reviewed, and discovery continues, it would be premature to have meaningful discussions regarding settlement at this time.

Respectfully submitted,

_____

James Grimley,
Counsel for the Defendants